# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 1, 2005

## STATE OF TENNESSEE v. JAMES BEASLEY

### Direct Appeal from the Circuit Court for Madison County
### No. 03-262     Roy B. Morgan, Jr., Judge

### No. W2004-01197-CCA-R3-CD  - Filed March 30, 2005

On appeal, the defendant challenges (1) the sufficiency of the evidence to support the verdicts, and (2) the trial court's denial of his request for a mistrial.  Following our review, we conclude that the evidence presented was sufficient to support the jury's verdict and that the trial court did not abuse its discretion in denying the defendant's request for a mistrial.  We affirm the judgments of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

George M. Googe, District Public Defender, and Stephen P. Spracher, Assistant Public Defender, for the appellant, James Beasley.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On June 2, 2003, the Madison County Grand Jury returned a two-count indictment, charging the defendant, James Beasley, with aggravated burglary (a Class C felony) and theft of property up to $500 (a Class A misdemeanor).  Following a jury trial on February 11, 2004, the defendant was convicted as charged.  He was sentenced as a career offender on the count of aggravated burglary and received a fifteen-year sentence.  On the remaining charge of theft of property up to $500, the defendant received a sentence of eleven months and twenty-nine days.  The sentences were ordered concurrent, for a total effective sentence of fifteen years.

The defendant filed a motion for new trial, which was heard on May 10, 2004, and subsequently denied by the trial court.  The defendant now appeals to this Court contending that (1)

the evidence presented was insufficient to support the verdicts, and (2) the trial court erred in failing to grant a mistrial. Following our review, the defendant's convictions are affirmed.

Facts

At trial, Sheila Ann Pittman ("Pittman") was the first to testify. Pittman stated that she lived at 106 Donovan Street in November 2002, which was located two houses down from the residence occupied by Linda Pirtle and Calvin Agins ("victims"). She stated that at approximately 10:30 a.m. on November 20, 2002, she was watching television in her home when she heard a loud noise. As she looked out of her window to investigate the source of the commotion, she observed an individual kicking the back door of the victims' residence at 114 Donovan Street. After kicking the door three to four times, the individual gained access to the residence, where he remained for approximately five to seven minutes.

In the meantime, Pittman phoned the police to report the activity and described the perpetrator as being "dressed up real neat" and wearing a hat, blue shirt, and beige pants. As the perpetrator exited the house, Pittman observed him carrying a leather jacket over his arm, but was unable to tell if he had anything under the jacket. She further indicated that, as he left the house, he was "looking around and then ran across the [railroad] tracks." Still on the phone with the authorities, Pittman relayed that the suspect was running southbound, away from the house. She testified that a police officer subsequently called back and eventually drove her to Peabody Street, where she identified the individual in police custody as the one she had seen burglarizing the victims' home.

On cross-examination, Pittman stated that the defendant was standing outside the patrol car when she identified him. She further testified that she recognized the defendant because she had gone to school with him through the sixth grade. Pittman also stated that she "[knew] of" the victims and was aware of where they were employed and what time they left for work. She testified that she knew the defendant was Linda Pirtle's cousin but was unaware of whether the defendant had visited the victims' home previously. Although Pittman reiterated that she could not tell if there was anything hidden under the jacket as the defendant left, she stated that there "could have been" a Skil saw under the jacket. On re-direct, Pittman explained that she was able to view what transpired because her house is located "further back" from the road.

Officer Mike Byrum ("Officer Byrum") then testified that he was employed with the Jackson Police Department and patrolled East Jackson, including Donovan Street, in November 2002. He testified that a woman reported seeing an individual kick in the back door of a neighbor's home, go inside, and then exit. He stated that he was directed to be on the look out (BOLO) for a black male wearing "a blue shirt, black pants, and a cream-colored hat." Shortly thereafter, Officer Byrum located someone fitting that description walking on Lenoir Street, which is approximately "a street over" from Donovan Street. He further stated that the individual he saw was "carrying something underneath his right arm wrapped in a brown leather jacket." Officer Byrum stopped the individual and identified him on the scene as the defendant. Upon asking what he had under his jacket, the

defendant placed the object, a Craftsman Skil saw, on the rear of the patrol car. A search of the defendant's person yielded two watches, a ring, and a silver chain necklace. The victims were subsequently called to the scene, where they identified the recovered property as being taken from their home. On cross-examination, Officer Byrum testified that the defendant was standing outside the patrol car when he was identified as the person seen burglarizing the victims' home.

The final witness, Linda Fay Pirtle ("Pirtle"),[1] testified that she lived at 114 Donovan Street in November 2002. She stated that she was employed at the Hampton Inn and that her normal working hours were 8:30 a.m. to 5 p.m. She further stated that Calvin Agins ("Agins"), who also lived in the home, worked in construction, and usually left for work at 8:00 a.m. She indicated that she locked both doors before leaving the house.

On November 20, 2002, Pirtle was called home from work by police, who informed her that her home had been burglarized. Upon arriving, an officer asked Pirtle to identify any items missing from her home. After inspecting the house, she noted that two watches, a necklace, and a ring were missing. At trial, Pirtle acknowledged that the defendant is her cousin but stated that he did not have permission to be in the house. Finally, Pirtle stated that Agins had a room in the house where he kept tools and that he had a Skil saw; however she "did not pay attention to the tools he had" and "couldn't say what his [saw] looked like."

On cross-examination, Pirtle specified that the defendant was her first cousin. She further stated that the defendant's first and only visit to their home had occurred the night before the burglary.

## Analysis

### I. Sufficiency

Initially, the defendant challenges the sufficiency of the evidence to support the verdicts. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

---

[1] The second victim, Calvin Agins, did not testify at trial.

The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

In the present case, the defendant was convicted of aggravated burglary and theft of property up to $500. A person commits aggravated burglary who, without the effective consent of the property owner, enters a habitation with intent to commit a felony, theft, or assault. Tenn. Code Ann. § 39-14-403(a) (2004). Moreover, a person commits theft of property "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2004).

Viewed in a light most favorable to the State, the record reflects that on November 20, 2002, the defendant was observed kicking in the door of the victims' residence, entering the home, and emerging minutes later with a jacket over his arm, running from the house. Called to investigate the situation, Officer Byrum observed someone matching the eyewitness description walking down Lenoir Street, approximately one street over from the victims' residence. Officer Byrum stopped the individual, identified him as the defendant, and ultimately found in his possession a Skil saw, two watches, a ring, and a necklace. All items were identified by the victims as being stolen from their residence. Finally, Pirtle stated that she locked the doors to her home and that the defendant did not have permission to be in the house. Upon our review, we conclude that the evidence presented was sufficient for a rational trier of fact to find the defendant guilty of the conviction offenses.

## II. Denial of Mistrial

The defendant also contends that the trial court erred in denying his request for a mistrial following Officer Byrum's testimony at trial regarding prior statements made at the defendant's parole hearing. Specifically, he avers that a mistrial should have been granted because the jury would logically infer from the term "parole" that the defendant had a prior felony record. The determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Reid, 91 S.W.3d 247, 279 (Tenn. 2002). Further, the burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). Although no abstract formula should be mechanically applied in making the determination, this Court has previously considered the following factors in determining whether a mistrial should be declared:

> When determining whether a mistrial is necessary after a witness had injected improper testimony, this court has often considered: (1) whether the improper testimony resulted from questioning by the State, rather than having been a gratuitous declaration; (2) the relative strength or weakness of the State's proof; and (3) whether the trial court promptly gave a curative instruction.

State v. Paul Jones, No. W2001-02637-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 1043, at *11-12 (Tenn. Crim. App., at Jackson, Dec. 6, 2002) (citing State v. Demetrius Holmes, No. E2000-02263-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 923 (Tenn. Crim. App., at Knoxville, Nov. 20, 2001)); State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993).

In the present case, the following testimony was elicited from Officer Byrum on cross-examination by defense counsel:

Q: And where was he when they identified him?
A: He was standing outside my patrol unit.
Q: Standing outside your patrol unit. Now you testified about this before; have you not?
A: Yes, sir.
Q: Okay. At that point did you not say he was in the patrol car?
A: He was placed in the patrol car and then taken out of the patrol car.
Q: But did you not state at that earlier time that he was in the patrol car when he was identified?
A: No, sir. The only time I testified to anything was at the parole hearing.

At that point, defense counsel called a bench conference and requested a mistrial. The trial court denied the request, noting that the reference to a parole hearing was "very quick" and that it was in response to defense counsel's questioning regarding prior statements. The defense accepted the trial court's offer of a curative instruction but requested that the instruction be general in nature and not contain the word "parole," so as not to bring the word back to the jury's mind. The trial court so instructed: "Ladies and gentlemen, I just want to direct the jury that the last comment of the witness is stricken and is not to be considered by you as evidence in this case."

Upon assessing the Jones factors in light of the facts presented on appeal, we conclude that the trial court did not abuse its discretion in denying the defendant's request for a mistrial. Regarding the first factor, we note, as did the trial court, that the statement was not elicited by the State but was a result of the defense counsel's questioning regarding prior statements made at the defendant's parole hearing. The second factor is the relative strength or weakness of the State's case. As we have previously discussed, the State's proof in this case was substantial and included an eyewitness identification of the defendant, as well as the defendant being found in possession of the stolen items in close proximity to the burglarized residence. Finally, we are to consider whether the trial court promptly gave a curative instruction to the jury. In the present case, the instruction given was not only prompt but was also general in nature, as the defense counsel requested. Therefore, all three factors support the conclusion that the trial court did not abuse its discretion in denying the request for a mistrial.

## Conclusion

For the foregoing reasons, the defendant's convictions are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE